O'DELL LONG, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Long v. Commissioner
Docket No. 8476-78.
United States Tax Court
T.C. Memo 1984-309; 1984 Tax Ct. Memo LEXIS 366; 48 T.C.M. (CCH) 302; T.C.M. (RIA) 84309; June 19, 1984. O'Dell Long, pro se. Ronald D. Dalrymple, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1975 in the amount *367 of $932. The issues for our decision are: (1) whether petitioner is entitled to deduct certain employee business expenses for travel, meals and lodging while he was employed at Camp Mercury, Nevada, during 1975, under section 162(a); [1] and (2) whether a subsistence allowance of $7.50 per day was includible in petitioner's gross income for 1975 under section 61(a). FINDINGS OF FACT Some of the facts have been stipulated.The stipulation and exhibits attached thereto are incorporated herein by reference. O'Dell Long resided in Bullhead City, Arizona, at the time he filed the petition in this case.He and his wife, Glennita G. Long, timely filed a joint income tax return for the calendar year 1975 with the Internal Revenue Service Center at Ogden, Utah. [2]
In February 1974, petitioner became employed as a motor patrol operator by Reynolds Electric & Engineering Co., Inc. ("Reynolds"), at Camp Mercury, *368 Nevada ("Nevada Test Site"). Petitioner's employment as such operator continued there until July 1977 when he resigned, pursuant to a company rule, in order to reapply to Reynolds for a better paying position at another work area within the Nevada Test Site. Petitioner was reemployed by Reynolds in August of 1977 in the new position and continued to work there until February 1979. During the time that petitioner was employed at the Nevada Test Site, he maintained his family residence at Bullhead City, Arizona. The one-way distance between petitioner's residence and the Nevada Test Site is 210 miles. Mr. Long remained overnight at the Nevada Test Site five nights of the week and traveled to his family residence on weekends. During 1975, he made the round trip between Camp Mercury and his residence in Bullhead City a total of 49 times. Petitioner was not required by his employer to remain overnight at the test site. He also was not required to take his meals at Camp Mercury. However, if he wanted to eat lunch, he was required to carry it with him to the field. Reynolds provided reduced-rate meals and lodging at Camp Mercury for its employees. It also paid petitioner $7.50 *369 per day to offset transportation, meal and lodging expenses. Petitioner was permitted to spend this amount for any purpose, and he was paid $7.50 per day whether or not he actually spent that amount. The subsistence allowance was included as income in petitioner's Form W-2 and reported on his 1975 Federal income tax return. In the notice of deficiency, respondent disallowed deductions totaling $4,957 which petitioner claimed as employee business expenses for transportation, lodging and meals. Petitioner has substantiated the amount of the claimed expenses and respondent has conceded a portion of the automobile expense for trips to the union hall and a trip to take a defensive driving test. In his petition Mr. Long questioned the disallowance of the balance of the employee expense deduction and raised the issue of the exclusion or "deductibility" of his subsistence allowance. OPINION 1. Employee Business Expenses.
Section 162(a)(2) allows a taxpayer to deduct traveling expenses if he can establish that they were: (1) ordinary and necessary; (2) incurred while "away from home"; and (3) incurred in the pursuit of a trade or business. ; *370 . We have consistently held that a taxpayer's "home" for purposes of section 162(a)(2) is the vicinity of his principal place of business or employment, and not where his personal residence is located, if such residence is located in a different place from his principal place of employment. ; ; . However, an exception to this rule exists when a taxpayer accepts employment which is away from his tax home and which is temporary as opposed to indefinite. , affd. . Under the exception, the taxpayer's "tax home" does not shift to the vicinity of his temporary employment and he is regarded as being "away from home" while working at such location. Employment is temporary if its termination within a short period of time can be foreseen. ;. *371 Employment is indefinite if either its termination within a fixed or reasonably short period of time cannot be foreseen, , affd. , or it continues for a substantial or indefinite duration. . The burden of proving that his employment was temporary rests on the taxpayer. ; Rule 142(a). [3]
The Court of Appeals for the Ninth Circuit, to which an appeal from this case would lie, has devised its own test for determining whether a taxpayer's "tax home" has shifted to the present site of employment. In , revg. , the Court of Appeals stated that employment is indefinite "if there is a reasonable probability known to [the taxpayer] that he may be employed for a long period of time at his new station. What constitutes 'a long period of time' varies *372 with circumstances surrounding each case." [Emphasis in original.] Subsequent opinions by the Ninth Circuit on the same question reveal that its approach to the exception to the general "tax home" rule does not differ materially from the view of this Court. See, e.g., , affg. in part, revg. in part, and remanding in part, .On this record, however, it is unnecessary to discuss what differences, if any, exist between the two approaches because we conclude that under either the temporary-indefinite test of this Court, or under the Harvey test, petitioner's employment at the Neveda Test Site was not temporary. Petitioner worked at the Neveda Test Site from February, 1974 through February 1979, with only a one-month break in service. He resigned in July of 1977 so as to comply with a company rule and reapply for a better-paying position as a motor patrol operator at another work area within the Nevada Test Site. Petitioner contends that he was low on the seniority list and had no guarantee of a permanent job. He argues that the expenses he incurred while at the Nevada *373 Test Site were necessay to carry on his business. He also maintains that the nature of his work made it impossible to know whether and for how long he would be employed at any one time. Construction work is by its nature temporary in that employment at a particular site will cease when the construction at that site is completed. But this is not the definition of temporary that is used in determining whether an employee's expenses are deductible while away from home on business. See We think that when petitioner became employed at Camp Mercury in 1974, he might reasonably have expected his new job to last for an indefinite period. Although we recognize that there was no guarantee of a permanent job, if the employment merely lacks permanence, it is "indefinite," not "temporary." We are satisfied that petitioner's employment with Reynolds was of indeterminate duration. We conclude, therefore, from the record as a whole that petitioner's employment at Reynolds was indefinite rather than temporary. [4]
*374 2. Subsistence Allowance.
Petitioner claims that the $7.50 subsistence allowance he received for 49 weeks during 1975 is excludible ("deductible") from his income. Respondent rejoins that in the absence of a specific exemption, subsistence allowances are included in gross income under section 61(a). In , the Supreme Court held that a state trooper was required to include in his gross income cash payments, designated as meal allowances, paid to him by the state. In reaching its conclusion, the Court stated the following: Section 119 provides that an employee may exclude from income "the value of any meals * * * furnished to him by his employer for the convenience of the employer, but only if * * * the meals are furnished on the business premises of the employer * * *." By its terms, § 119 covers meals furnished by the employer and not cash reimbursements for meals. [Emphasis in the original.] . Like the taxpayer in Kowalski, petitioner had complete dominion over his cash allowance and could spend it as he pleased. Cf. . *375 We conclude, therefore, that petitioner's subsistence allowance was properly reported as ordinary income. To reflect concessions, Decision will be entered under Rule 155.
Footnotes
1. All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue.↩
2. Although the notice of deficiency was mailed to O'Dell and Glennita Long, only O'Dell Long has petitioned this Court for a redetermination of the deficiency.↩
3. All rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.↩
4. Petitioner's reliance on , is misplaced. There, a unique combination of circumstances, including seasonal work, a controversial project, frequent layoffs and sporadic rehiring, made it likely that the taxpayer's employment would be short. In contrast, the record in this case fails to show those elements of temporariness such as frequent layoffs and sporadic rehiring which the Court of Appeals found important in Frederick.↩